# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS

* * * * * * * * * * * * * * * * * * * *
ALISHA N. PANKIW,                       *
                                        *
                                        *       No. 15-1082V
          Petitioner,                   *       Special Master Christian J. Moran
                                        *
v.                                      *
                                        *       Filed: November 2, 2021
SECRETARY OF HEALTH                     *
AND HUMAN SERVICES,                     *
                                        *       Entitlement; influenza ("flu") vaccine;
          Respondent.                   *       inflammatory arthritis; remand.
* * * * * * * * * * * * * * * * * * * *

William E. Cochran, Jr., Black McLaren et al., P.C., Memphis, TN, for petitioner;
Sarah C. Duncan, United States Dep't of Justice, Washington, DC, for respondent.

## DECISION ON REMAND DENYING COMPENSATION[1]

Alisha Pankiw alleges that an influenza ("flu") vaccination caused her to suffer rheumatoid arthritis. She seeks compensation pursuant to the National Childhood Vaccine Injury Compensation Program.

A March 9, 2021 decision found that Ms. Pankiw did not establish that she was entitled to compensation. Pankiw v. Sec'y of Health & Hum. Servs., No. 15-1082V, 2021 WL 1264559 (Fed. Cl. Spec. Mstr. Mar. 9, 2021). The two bases were that Ms. Pankiw did not establish that she suffered from rheumatoid arthritis and she did not establish that the flu vaccine can cause rheumatoid arthritis.

---

[1] The E-Government Act, 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services), requires that the Court post this decision on its website. This posting will make the decision available to anyone with the internet. Pursuant to Vaccine Rule 18(b), the parties have 14 days to file a motion proposing redaction of medical information or other information described in 42 U.S.C. § 300aa-12(d)(4). Any redactions ordered by the special master will appear in the document posted on the website.

Ms. Pankiw challenged this decision.  Pet'r's Mot. for Rev., filed Apr. 7, 2021.  The Court granted this motion for review, vacated the March 9, 2021 decision, and remanded for additional consideration.  The Court specifically directed the undersigned to analyze Ms. Pankiw's claim based upon a premise that she suffered from inflammatory arthritis (not rheumatoid arthritis).  In this regard, the Court also instructed the undersigned to consider the opinion from a doctor who treated Ms. Pankiw, Dr. Thornberry.

The different posture does not change the result.  As confirmed on remand, the theory by which a flu vaccine can cause inflammatory arthritis is the same as the previously considered theory by which a flu vaccine can cause rheumatoid arthritis.  Thus, the value of that theory does not change.  Moreover, although Dr. Thornberry's opinion adds some weight to Ms. Pankiw's evidence, Dr. Thornberry's opinion is not sufficiently persuasive to tip the scales in Ms. Pankiw's favor.  Accordingly, Ms. Pankiw has not met her burden of proof.

## I.   **Factual Background**

Ms. Pankiw was born in 1980.  Exhibit 1.  By 2012, Ms. Pankiw had been diagnosed with hyperthyroidism, thyroiditis, and back pain.  Exhibit 15 at 8-11; exhibit 35 at 5-10.  After giving birth, Ms. Pankiw was diagnosed with low thyroid stimulating hormone.  Exhibit 15 at 86-92; exhibit 37 at 5, 11.  On September 17, 2012, an endocrinologist, Ernest Asamoah, stated that Ms. Pankiw's condition was "classic for post partum thyroiditis."  Exhibit 16 at 9-10.

Ms. Pankiw received her flu vaccination on September 28, 2012.  Exhibit 2 at 1.  She then presented to her primary care physician, Dr. Heisel, 12 days later on October 10, 2012, complaining of "temporomandibular joint pain."  Exhibit 6 at 1. Dr. Heisel characterized Ms. Pankiw's reported joint pain as "sharp in ankle," "achy in knee," "swollen knee," and "most notable in the right ankle."  Id. at 5. However, Dr. Heisel noted that, while Ms. Pankiw did "have some arthritis," that "[i]t is not a typical presentation for rheumatoid arthritis.  It isn't symmetric."  Id. Additionally, a squeeze test was performed, which was negative.  Id.  Dr. Heisel noted a pain onset of "4 [months] ago 2 months postpartum."  Id. at 4.  There are discrepancies in the doctors' records regarding reported onset of Ms. Pankiw's symptoms.  However, the undersigned has found that her joint pain began on approximately October 1, 2012.  See Pankiw v. Sec'y of Health & Hum. Servs., No. 15-1082V, 2017 WL 1376435, at *4 (Fed. Cl. Spec. Mstr. Mar. 21, 2017).

At a follow-up visit on October 15, 2012, Ms. Pankiw reported a worsening of her symptoms, which she characterized primarily as "stiffness."  Id. at 22.  Dr. Heisel again noted that Ms. Pankiw exhibited "acute arthritis," but that it was

"[s]till not likely to be rheumatoid arthritis." Id. at 23.  He further noted that "[a]n inflammatory arthritis is suggested by her postpartum status and the presence of postpartum thyroiditis." Id.  Ms. Pankiw received a steroid injection in her left knee and was put on prednisone at this visit.

On October 23, 2012, Ms. Pankiw reported to Dr. Heisel that her knee stiffness/pain had improved but was worsening again, that her right ankle was worse, and that there had been no change in the pain levels for her index finger and left third toe. Id. at 27-31.  Dr. Heisel determined that rheumatoid arthritis was "fairly unlikely." Id. at 31.

A few weeks later, on November 12, 2012, after learning she was pregnant, Ms. Pankiw visited her gynecologist for a prenatal visit.  Ms. Pankiw advised her gynecologist of her potential rheumatological diagnosis and stated that, due to the prednisone, she had experienced a "huge improvement in left knee stiffness." Exhibit 8 at 8.

On December 4, 2012, Ms. Pankiw attended her first rheumatology visit with Dr. Thomas.  Exhibit 7 at 3.  She presented with "undifferentiated arthritis" and complained of pain in her left knee, right ankle, and right index finger. Id.  Dr. Thomas noted the possibility of "seronegative [rheumatoid arthritis]" and the potential complicating diagnostic factor that Ms. Pankiw's pregnancy presented. Id.  Dr. Thomas indicated that Ms. Pankiw suffered from an "unspecified inflammatory polyarthropathy" consistent with her thyroid disease.  Dr. Thomas prescribed prednisone. Id.

Ms. Pankiw returned to her endocrinologist, Dr. Asamoah, on November 20, 2012.  Dr. Asamoah increased her dose of Synthroid to treat her thyroiditis. Exhibit 16 at 21-27.

Between November 2012 and February 2013, Ms. Pankiw presented to multiple medical providers consistently complaining of pain and/or stiffness in her left knee, right ankle, wrist, and right index finger.  For example, during a December 4, 2012 visit, Dr. Thomas (a rheumatologist) stated that Ms. Pankiw might be suffering from "early seronegative [rheumatoid arthritis]," but also noted that Ms. Pankiw's pregnancy could complicate a diagnosis.  Exhibit 7 at 3.

Ms. Pankiw saw a specialist in infectious diseases, Thomas Slama, on December 18, 2012.  Dr. Slama observed that Ms. Pankiw had a "hot, swollen right ankle and left knee in addition to arthraligia of her left wrist." Exhibit 9 at 33-34.  Dr. Slama determined that Ms. Pankiw "has an active synovitis that is not likely

3

bacterial in etiology" and referred her to another rheumatologist, Denise Thornberry.  Id. at 20.

The appointment with Dr. Thornberry took place on February 18, 2013.  In the history, Dr. Thornberry stated Ms. Pankiw "received an influenza vaccine on 09/29/2012, and by 10/14/2012 she had to walk with crutches secondary to pain and swelling of the left knee and her right ankle. She also developed pain and swelling at the left 3rd toe and at the right index finger." Exhibit 10 at 49. Presently, Ms. Pankiw was having pain in her right index finger, right ankle, and left knee.  Dr. Thornberry recorded her impression of Ms. Pankiw's condition as "[a]symmetric inflammatory polyarthritis associated with positive ANA." Exhibit 9 at 18.  She also noted that "[t]he distribution of [Ms. Pankiw's] articular disease is unusual for systemic lupus erythematosus (SLE) and rheumatoid arthritis. However we must consider that there is some influence upon her arthropathy by her pregnant state." Id.

On February 20, 2013, Dr. Asamoah noted normal thyroid tests, despite Ms. Pankiw's consistent complaints of joint pain and stiffness.  Exhibit 16 at 37-43. On March 1, 2013, Dr. Linn characterized Ms. Pankiw's condition as "[p]ossibly arthritis/myalgias related to flu shot vs lupus." Exhibit 8 at 29.  Dr. Linn listed systemic lupus erythematosus (SLE) as Ms. Pankiw's diagnosis.  Id. at 41.

By May 2013, Ms. Pankiw began reporting significant improvement in her symptoms to her medical providers.  Ms. Pankiw told Dr. Thornberry that the persistent swelling in her right ankle was not painful.  Exhibit 10 at 45.  Dr. Thornberry decreased the amount of prednisone Ms. Pankiw was prescribed.

In an appointment on September 5, 2013, Dr. Thornberry noted that, based on her evaluation, Ms. Pankiw's "pauciarticular inflammatory arthritis associated with positive ANA [has] resolved." Exhibit 9 at 9.[2]  Dr. Thornberry later maintained this as the date of resolution of Ms. Pankiw's arthritis symptoms in a letter to Ms. Pankiw's attorney, stating that Dr. Thornberry "felt that the arthritis had resolved when [she] examined her on 09/05/2013." Exhibit 10 at 28.

On January 20, 2014, Dr. Thornberry responded to a request made by Ms. Pankiw on December 13, 2013, in which she asked for a note stating that she could not receive the flu vaccination in the future, stating that Ms. Pankiw "had a significant adverse reaction to an influenza vaccine administered in September, 2012, manifested by arthritis." Exhibit 10 at 41, 81.

---

[2] Pauciarticular means "pertaining to or involving only a few joints." Dorland's Illus. Med. Dictionary 1378 (33d ed. 2020)

Over a year later, Ms. Pankiw presented to Dr. Thornberry with joint pain. Dr. Thornberry characterized her condition as "joint pain without evidence of inflammatory arthritis" and noted that she "suspect[ed] that [Ms. Pankiw's] discomfort [wa]s in part due to her deconditioned state and her overweight status." Id. at 16-17 (Jan. 8, 2015). Dr. Thornberry noted that Ms. Pankiw "has been talking with an attorney about compensation from a national vaccination fund in order to cover her medical expenses relative to her reaction to the influenza vaccine." Id. at 17. Dr. Thornberry's impression included "History of a reaction to influenza vaccine." Id.

Ms. Pankiw did not complain of joint pain at any of her multiple subsequent medical appointments in 2015. In her letter to Ms. Pankiw's attorney on May 29, 2015, Dr. Thornberry stated that "[w]ith the asymmetric and pauci-articular nature of her illness, consistent with viral arthropathy or vaccine-induced arthropathy, it was felt that there was a reasonable medical probability that her symptoms were caused by the influenza vaccination." Exhibit 10 at 30.

## II.   Procedural History

Ms. Pankiw filed her petition on September 28, 2015. She asserted that the flu vaccination she received on September 28, 2012, caused her to suffer "arthritis of the joints." Pet. at Preamble, ¶¶ 2, 9. Ms. Pankiw filed medical records along with her petition. She filed a statement of completion on December 18, 2015.

The Secretary filed his Rule 4(c) report on April 1, 2016, contesting Ms. Pankiw's claim based on his view that Ms. Pankiw failed to present: (1) a reputable scientific or medical theory showing that the flu vaccine can cause arthritis (prong 1); (2) evidence showing that the flu vaccine actually caused arthritis of the joints in Ms. Pankiw's case; and (3) evidence establishing that the time frame between Ms. Pankiw's vaccination and onset of her injury fell within a medically acceptable time frame. Resp't's Rep. at 11-12. Additionally, the Secretary argued that Ms. Pankiw had not established a clear onset date for her arthritis and that she had "ignored potential alternative causes of the arthritis in her joints," specifically the potential effects of her pregnancy on her joint pain. Id. at 12-13.

The parties discussed the factual issue of the onset of Ms. Pankiw's joint pain in a status conference held on April 12, 2016. Eventually, a fact hearing regarding onset of Ms. Pankiw's symptoms was set for October 18, 2016, in Indianapolis, IN. The undersigned found that Ms. Pankiw's joint pain began on approximately October 1, 2012. See Pankiw, 2017 WL 1376435, at *4.

The parties then filed a succession of expert reports.  Ms. Pankiw presented reports from Dr. Utz and the Secretary presented reports from Dr. Matloubian and Dr. Whitton.  See exhibits 38-41, A, C-D, F-I.  The Secretary filed the final expert report on December 9, 2019.  The opinions from Dr. Utz and Dr. Matloubian on the topic of whether the flu vaccine can cause rheumatoid arthritis largely matched the reports they authored in another case, Tullio v. Secretary of Health & Human Services.  Thus, at one point, the parties in Tullio and the parties in Pankiw considered holding one hearing.  See order, issued Dec. 10, 2018.   However, the parties abandoned that effort largely due to the presence of experts other than Dr. Utz and Dr. Matloubian.

Dr. Utz and Dr. Matloubian presented testimony as to whether the flu vaccine can cause rheumatoid arthritis in a hearing held in Tullio on March 6-8, 2019.  After considering this testimony as well as a series of medical articles including epidemiologic studies, the undersigned found that the petitioner in Tullio had not established that the flu vaccine can cause rheumatoid arthritis.  Tullio v. Sec'y of Health & Hum. Servs., No. 15-51V, 2019 WL 7580149 (Fed. Cl. Spec. Mstr. Dec. 19, 2019), mot. for rev. denied, 149 Fed. Cl. 448 (2020).

In a status conference held on February 18, 2020, the undersigned discussed with Ms. Pankiw and the Secretary the likely effect of the decision in Tullio.  Ms. Pankiw's attorney stated that he would consult with Dr. Utz regarding potential distinguishing factors between Ms. Pankiw's case and that of the petitioner in Tullio.  He expressed a desire to wait on making any decisions about how to proceed in Ms. Pankiw's case until the Court of Federal Claims ruled on the motion for review in Tullio.  Order, issued Feb. 18, 2020.

On June 18, 2020, the Court of Federal Claims issued a decision denying the petitioner's motion for review in Tullio.  149 Fed. Cl. 448 (2020).  The petitioner in Tullio did not appeal to the Federal Circuit.

After Ms. Pankiw's attorney requested additional time to review the Court's Opinion denying the motion for review in Tullio and consult with Dr. Utz and Ms. Pankiw, a status conference was held on September 29, 2020.  Ms. Pankiw was ordered to submit additional proof to support her case and/or submit the case for a ruling on the record by October 29, 2020.  Order, issued Sept. 30, 2020.  Ms. Pankiw filed additional medical literature on October 28, 2020.  See exhibit 52 (Normi Bruck et al., Transient Oligoarthritic of the Lower Extremity Following Influenza B Virus Infection: Case Report, 8 Ped. Rheu. 4 (2010)).

Ms. Pankiw argued for a ruling on the record in her favor through a motion, which was three paragraphs.  Pet'r's Mot., filed Dec. 21, 2020.  The Secretary

argued that Ms. Pankiw was not entitled to compensation through a response, which was essentially five pages.  The Secretary argued that "Dr. Utz's evidence under Althen prong one that was previously deemed unreliable and unpersuasive in Tullio, should be rejected here as well."  Resp't's Resp., filed Jan. 4, 2021, at 3.  Although in reply Ms. Pankiw did not address Tullio, she cited other decisions in which special masters found a flu vaccine can cause rheumatoid arthritis.  Pet'r's Reply, filed Jan. 11, 2021.

As noted in the introduction, the March 9, 2021 Decision found that Ms. Pankiw was not entitled to compensation.  The undersigned found that Ms. Pankiw's expert, Dr. Utz, had proffered a theory explaining how flu vaccine can cause rheumatoid arthritis, but Ms. Pankiw did not establish that she suffered from rheumatoid arthritis.  In addition, the undersigned found that Dr. Utz's theory for how flu vaccine can cause rheumatoid arthritis was sufficiently similar to the theory evaluated in Tullio that the same result was warranted.  Thus, the undersigned found that Ms. Pankiw had failed to establish the first Althen prong.

Ms. Pankiw challenged the March 9, 2021 Decision.  Ms. Pankiw raised two objections.  First, the undersigned "erred in determining petitioner has not met her burden of demonstrating a diagnosis of rheumatoid arthritis, when petitioner never alleged she had rheumatoid arthritis."  Pet'r's Mot. for Rev., filed Apr. 7, 2021, at 6.  Second, Ms. Pankiw maintained the undersigned "erred in determining petitioner has not met her burden of demonstrating that her flu vaccine caused her inflammatory arthritis."  Id. at 7.  In this section, Ms. Pankiw did not discuss Tullio.

The Secretary supported the March 9, 2021 Decision.  According to the Secretary, any criticisms regarding "diagnosis are immaterial."  Resp't's Resp. to Mot. for Rev., filed May 7, 2021, at 13.  The Secretary further argued that the undersigned's "finding that petitioner did not satisfy her burden on Althen prong one is supported by the record."  Id. at 14.  In this section, the Secretary discussed Tullio.

 As mentioned, the Court granted the motion for review.  The Court ordered a consideration of Ms. Pankiw's theory of how the flu vaccine can cause inflammatory arthritis, particularly in light of Dr. Thornberry's opinions.

On remand, the undersigned inquired whether the theory Dr. Utz proposed in Ms. Pankiw's case differed from the theory that he proposed in Tullio.  In response, Dr. Utz confirmed that "There are no material differences between my opinion as to how the flu vaccine cause inflammatory arthritis (as expressed in

Pankiw) and my opinion as to how the flu vaccine can cause rheumatoid arthritis (as expressed in Tullio)."  Exhibit 53 (Dr. Utz's letter, dated Sept. 2, 2021).

Following this submission, the undersigned conferred with the parties regarding potential next steps in a status conference held on September 14, 2021. The parties stated that they did not have any additional evidence or arguments to offer, making the decision on remand ready for adjudication.

## III.   Standards for Adjudication

Petitioners are required to establish their cases by a preponderance of the evidence.  42 U.S.C. § 300aa–13(1)(a).  The preponderance of the evidence standard requires a "trier of fact to believe that the existence of a fact is more probable than its nonexistence before [he] may find in favor of the party who has the burden to persuade the judge of the fact's existence."  Moberly v. Sec'y of Health & Hum. Servs., 592 F.3d 1315, 1322 n.2 (Fed. Cir. 2010) (citations omitted).

To receive compensation, petitioners must establish five elements.  42 U.S.C. § 300aa–11(c)(1)(A) through (E); 42 U.S.C. § 300aa–13(a)(1)(A) (authorizing special masters to award compensation when petitioners establish items listed in section 11(c)(1)).  To establish causation for off-Table injuries, petitioners bear a burden "to show by preponderant evidence that the vaccination brought about [the vaccinee's] injury by providing: (1) a medical theory causally connecting the vaccination and the injury; (2) a logical sequence of cause and effect showing that the vaccination was the reason for the injury; and (3) a showing of a proximate temporal relationship between vaccination and injury."  Althen v. Sec'y of Health & Hum. Servs., 418 F.3d 1274, 1278 (Fed. Cir. 2005).

The process for finding facts in the Vaccine Program begins with analyzing the medical records, which are required to be filed with the petition.  42 U.S.C. § 300aa–11(c)(2).  Medical records that are created contemporaneously with the events they describe are presumed to be accurate.  Cucuras v. Sec'y of Health & Hum. Servs., 993 F.2d 1525, 1528 (Fed. Cir. 1993).

## IV.   Analysis

While the March 9, 2021 Decision incorrectly asserted that Ms. Pankiw was alleging that the flu vaccine caused her to suffer rheumatoid arthritis, the Court has stated that Ms. Pankiw's claim was that the flu vaccine caused her to suffer inflammatory arthritis.  In this regard, the Court emphasized a May 29, 2015 statement from Dr. Thornberry that Ms. Pankiw "had recovered from inflammatory arthritis."  Pankiw v. Sec'y of Health & Hum. Servs., No. 15-1082V, 2021 WL

3855768, at *10 (Fed. Cl. Aug. 13, 2021) (quoting exhibit 10 at 27).   Once the
question of diagnosis is resolved, a critical question is whether Ms. Pankiw has
established, by preponderant evidence, "a medical theory causally connecting the
[flu] vaccination and the injury [inflammatory arthritis]." Althen, 418 F.3d at
1278.

Ms. Pankiw has failed to provide a persuasive medical theory showing that a
flu vaccination can cause arthritis.  This finding is based primarily on the fact that
Ms. Pankiw advances a virtually identical theory as was advanced in Tullio, a case
in which the undersigned rejected the molecular mimicry-based theory to explain
how a flu vaccine can cause rheumatoid arthritis.  In Dr. Utz's recent letter, he
agreed that "There are no material differences."  Exhibit 53.

The petitioner in Tullio advanced the theory of molecular mimicry.[3]  Dr. Utz
stated that "[i]n rheumatoid arthritis, the portion of the body that is attacked is the
synovium.  A constituent part of the synovium is collagen. . . . [A] sufficient
degree of similarity between collagen and a portion of the flu vaccine such that
T cells attack not only the flu antigens but also collagen." Tullio, 2019 WL
7580149, at *12.  In response, the Secretary's expert Dr. Matloubian argued that
the articles presented by Dr. Utz to support his theory "do not show a similarity
between collagen and a portion of the flu vaccine." Id.

Dr. Utz posits essentially the same theory of causation in this case.  In his
report, Dr. Utz states that:

> It is well accepted in the field of rheumatology that Type II collagen is
> an autoantigen in RA.  The Sun manuscript, as well as many other
> manuscripts referenced in their paper, demonstrate that the influenza
> antigen (HA) that is most important in generating an effective anti-
> viral response contains linear epitope(s) that can trigger a strong
> immune response that can cause inflammatory arthritis.  Undoubtedly
> other environmental (nonself) vaccine antigens can trigger immune
> responses directed against self-molecules, leading to diseases, such as
> inflammatory arthritis, RA, and MS.

Exhibit 38 at 17.  In response, Dr. Matloubian argued that there is no "scientific
evidence to support molecular mimicry between influenza and collagen or other
RA associated antigens" – an argument substantially similar to that of his
responsive expert report in Tullio.  Exhibit A at 22.

---

[3] For a detailed explanation of the molecular mimicry theory, see Tullio, 2019 WL
7580149, at *12.

In Tullio, Dr. Utz and Dr. Matloubian had an opportunity to explain the bases for their opinions and the undersigned evaluated that testimony.[4]  The undersigned found that the epidemiological evidence strongly weighed against a finding that the flu vaccine can cause rheumatoid arthritis.  Tullio, 2019 WL 7580149, at *27.  The undersigned also found that Dr. Utz's theory of molecular mimicry did not establish a likely homology between a component of the flu vaccine and a body part impaired in rheumatoid arthritis.  Id. at *22.  As noted previously, the Court ruled that these findings were not arbitrary.  149 Fed. Cl. at 468.[5]

Given the high degree of similarity between Dr. Utz's opinion in Tullio and in Ms. Pankiw's case, should Dr. Utz's opinion be treated the same?  Afterall, Dr. Utz has confirmed on remand that his opinions are materially the same.  Exhibit 53.  In addition, one of the experts who addressed Dr. Utz's opinion in this case (Dr. Matloubian) has offered virtually the same opinion contesting Dr. Utz's opinion as he did in Tullio.

There appears to be no principled reason for weighing Dr. Utz's opinion differently in Ms. Pankiw's case than how it was weighed in Tullio.  Ms. Pankiw's three briefs have failed to discuss Tullio in any respect.  See Pet'r's Mot. for Ruling on the Record, filed Dec. 21, 2020; Pet'r's Reply in Support of a Ruling on the Record, filed Jan. 4, 2021; Pet'r's Mot. for Rev., filed Apr. 7, 2021.  If anything, the Secretary's submission of reports from a second expert, Dr. Whitton, further undermine Dr. Utz's opinion that a flu vaccine can cause inflammatory arthritis.  Exhibit I (Dr. Whitton's report, dated Dec. 3, 2019).

However, Ms. Pankiw's evidence consists of more than just Dr. Utz's opinion.  Two potentially distinguishing factors are an additional piece of medical literature and Dr. Thornberry's opinions.

The additional article contributes very little.  The March 9, 2021 Decision explained why this article was not valuable:

> The case report described a twelve-year-old girl who developed transient oligoarthritis after suffering from the influenza B infection.  [Exhibit 52] at 1.  As a preliminary matter, case reports hold relatively little weight in vaccine cases.  W.C. v.

---

[4] Each party in Tullio called one additional witness.  However, the primary witnesses were Dr. Utz and Dr. Steinman.

[5] Another special master rejected molecular mimicry as a way to explain how the flu vaccine can cause rheumatoid arthritis in a case not involving Dr. Utz.  Moran v. Sec'y of Health & Hum. Servs., No. 16-538V, 2021 WL 4853544, at *24-28 (Fed. Cl. Spec. Mstr. Oct. 4, 2021).

> Sec'y of Health & Hum. Servs., No. 07-456V, 2011 WL
> 4537887, at *13 (Fed. Cl. Spec. Mstr. Feb. 22, 2011) ("[C]ase
> reports are generally weak evidence of causation because [they]
> cannot distinguish a temporal relationship from a causal
> relationship."), mot. for rev. denied, 100 Fed. Cl. 440 (2011),
> aff'd, 704 F.3d 1352 (Fed. Cir. 2013).  Additionally, as the
> Secretary points out in his response, there are key
> distinguishing factors in this case report that make it
> unpersuasive for Ms. Pankiw's case – namely, that it involved
> (1) "possible" post-infectious arthritis, (2) an influenza
> infection, and (3) a child subject.  Exhibit 52 at 1; Resp't's
> Resp. at 3.  Additionally, the case report itself admits to a lack
> of reliability concerning causality.  Exhibit 52 at 2.

2021 WL 1264559, at *5.

Ms. Pankiw did not challenge this assessment.  See Pet'r's Mot. for Rev.,
filed Apr. 7, 2021.  In its Opinion, the Court did not suggest that this evaluation
required reassessment in any respect.  Thus, the undersigned, again, declines to
give the case report any significant weight.

The more meaningful evidence, the one about which the Court directed
further consideration, is the set of opinions from Dr. Thornberry.  "Specifically, Dr
Thornberry stated that [Ms. Pankiw's] inflammatory arthritis was 'consistent with
viral arthropathy or a vaccine-induced arthropathy,' and that 'it was felt that there
was reasonable medical probability that her symptoms were caused by the
influenza vaccination.'"  2021 WL 3855768, at *3 (quoting exhibit 10 at 27-30).

As a statement from a doctor who treated Ms. Pankiw, Dr. Thornberry's
opinion that the flu vaccination caused her symptoms warrants careful
consideration.  Cappizano v. Sec'y of Health & Hum. Servs., 440 F.3d 1317, 1326
(Fed. Cir. 2006).  However, as the Court recognized Dr. Thornberry's opinion is
not binding.  2021 WL 3855768, at *11 (citing 42 U.S.C. § 300aa–13(b)); see also
Snyder v. Sec'y of Health & Hum. Servs., 88 Fed. Cl. 706, 745 n.67 (2009).

Dr. Thornberry's statement that the flu vaccine did cause an injury to Ms.
Pankiw implies that the flu vaccine can cause that injury.  See Cappizano, 440 F.3d
at 1326 (recognizing that evidence relevant to one Althen prong may be relevant to
another Althen prong); Caves v. Sec'y of Health & Hum. Servs., 100 Fed. Cl. 119,
145 (2011) ("[A]s noted by the special master, a statement that a vaccine did in
fact cause an injury presupposes that the vaccine is capable of causing that
injury."), aff'd, 463 Fed. App'x 932 (Fed. Cir. 2012) (per curiam).  But, the

undersigned declines to give Dr. Thornberry's statements regarding causation substantial weight.

The main weakness in Dr. Thornberry's statement is the lack of explanation. In terms of causation, the entirety of Dr. Thornberry's letter to Ms. Pankiw's attorney is: "With the asymmetric and pauci-articular nature of her illness, consistent with viral arthropathy or a vaccine-induced arthropathy, it was felt that there was a reasonable medical probability that her symptoms were caused by the influenza vaccination." Exhibit 10 at 28. Dr. Thornberry provides no basis explaining how a flu vaccine can induce an arthropathy. Dr. Thornberry does not indicate that she consulted any medical textbooks, and she does not indicate that she researched a potential causal connection by looking to online sources. Dr. Thornberry's conclusion that the flu vaccine caused Ms. Pankiw's symptoms seems to be just that – a conclusion. Without any elucidation from Dr. Thornberry about why she feels that the influenza vaccine harmed Ms. Pankiw, crediting this opinion is difficult.

Special masters are not obligated to accept all causal statements from treating doctors and may consider whether the treating doctor's causal opinion contains some explanation. See Langland v. Sec'y of Health & Hum. Servs., 109 Fed. Cl. 421, 438-40 (2013); Ruiz v. Sec'y of Health & Hum. Servs., No. 02-156V, 2007 WL 5161754, at *14 (Fed. Cl. Oct. 15, 2007) ("[T]he record as a whole makes clear that none of those experts was able to develop a medical theory to explain how petitioner's psychological disorder came about, whether as a direct result of the vaccination, her physical condition, or otherwise.").

One opinion that directs special masters not to expect much detail from a treating doctor, Campbell v. Sec'y of Health & Hum. Servs., 97 Fed. Cl. 650, 667 (2011), is distinguishable. There, a treating doctor offered an opinion that an influenza vaccine caused petitioner's rheumatoid arthritis during the course of treatment. Id. at 654.

In contrast, Dr. Thornberry presented her opinion to the attorney representing Ms. Pankiw. This chronology is a second, although less important, reason for giving Dr. Thornberry's statements relatively little weight. When Dr. Thornberry first saw Ms. Pankiw in February 2013, Dr. Thornberry knew that Ms. Pankiw received the flu vaccine and then developed joint pain approximately two weeks later. Exhibit 10 at 49.[6] Yet, Dr. Thornberry did not causally connect the

---

[6] The chronology Dr. Thornberry received does not match the undersigned's finding of fact. See Pankiw v. Sec'y of Health & Hum. Servs., No. 15-1082V, 2017 WL 1376435, at *4 (Fed. Cl. Spec. Mstr. Mar. 21, 2017) (finding her joint pain began on approximately October 1, 2012). When an expert assumes a set of facts not

two events.  This omission tends to weaken Dr. Thornberry's later-expressed opinion slightly.  See Duncan v. Sec'y of Health & Hum. Servs., 153 Fed. Cl. 642, 663 (2021) (noting that a special master may consider, among other factors, when a treating doctor first opined that the vaccine caused the injury).

 Dr. Thornberry's opinion about the causal role of the vaccine appears to have evolved.  At the beginning, Dr. Thornberry did not attribute Ms. Pankiw's symptoms to the flu vaccination.  In the next two visits, Dr. Thornberry did not express an opinion that the flu vaccine harmed Ms. Pankiw.  Exhibit 10 at 45 (May 7, 2013); id. at 42 (Sept. 5, 2013).[7]

Then, in response to Ms. Pankiw's request, Dr. Thornberry authored a letter to exempt her from future vaccinations.  Exhibit 10 at 41, 81.  This type of letter carries a varying amount of weight.  See Gramza v. Sec'y of Health & Hum. Servs., 139 Fed. Cl. 309, 335-36 (2018); Langland, 109 Fed. Cl. at 440.

Finally, Dr. Thornberry wrote the January 20, 2014 letter to Ms. Pankiw's attorney.  Unlike the treating doctor's statement in Campbell that was created during treatment, Dr. Thornberry appears to have had enough time to present a reasoned explanation for her conclusion that the vaccine caused Ms. Pankiw's symptoms.  The lack of support for this conclusion means that it carries relatively little weight.  See Caves, 100 Fed. Cl. at 134 ("[A] scientific theory that lacks any empirical support will have limited persuasive force.").

In short, in accord with the Court's instruction on remand, the undersigned has reconsidered Dr. Thornberry's opinion.  To the undersigned, Dr. Thornberry's opinion is less valuable than the more developed opinions from Dr. Matloubian and Dr. Whitton that the flu vaccine did not harm Ms. Pankiw.  See Whitecotton v. Sec'y of Health & Hum. Servs., 81 F.3d 1099, 1108 (Fed. Cir. 1996) (indicating that special masters enjoy discretion in how to weigh evidence).

Accordingly, Ms. Pankiw has not demonstrated with preponderant evidence that the flu vaccine can cause inflammatory arthritis.  The theory Dr. Utz presented is nearly identical to the theory he presented in Tullio and there is no reason for crediting that theory in this case after it was rejected in Tullio.  Ms. Pankiw's reliance on one case report involving a different disease adds very little to her case.

---

supported by preponderant evidence, a special master may reject that expert's opinion.  Burns v. Sec'y of Health & Hum. Servs., 3 F.3d 415, 417 (Fed. Cir. 1993).

 [7] In the October 18, 2016 hearing, Ms. Pankiw testified that Dr. Thornberry had said that the vaccine caused her problems before Ms. Pankiw requested a letter exempting her from vaccinations.  Tr. 239.  But, Dr. Thornberry did not memorialize this opinion in any of the records created while treating Ms. Pankiw.

Finally, Dr. Thornberry's opinion, although carrying some value, is not sufficiently persuasive to overcome the strength of the Secretary's opposition.

Furthermore, because Ms. Pankiw's case falls short in terms of <u>Althen</u> prong one, consideration of the two remaining <u>Althen</u> prongs is not necessary.  Likewise, because Ms. Pankiw has not met her burden of proof, Dr. Matloubian's suggestion that Ms. Pankiw's pre-existing thyroid problem caused her joint problems, <u>see</u> exhibit A at 23, need not be evaluated.

## V.   <u>Conclusion</u>

For the foregoing reasons, the undersigned finds that Ms. Pankiw has not met her burden to show by a preponderance of the evidence that the flu vaccination caused her arthritis.  Accordingly, the claim for compensation is DENIED.

The Clerk's Office is directed to enter judgment in accord with this decision unless a motion for review is filed.  Information about filing a motion for review, including the deadline for filing a motion for review, can be found in the Vaccine Rules, which are posted on the Court's webpage.  The Clerk's Office is also directed to provide this decision to the assigned judge pursuant to Vaccine Rule 28.1(a).

**IT IS SO ORDERED**.

<u>s/Christian J. Moran</u>
Christian J. Moran
Special Master

14